[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 6, 2009
THOMAS K. KAHN
CLERK

No. 08-16782
Non-Argument Calendar
_____

D. C. Docket No. 07-00357-CV-4-RH-WCS

SHERMAN LYNELL THOMAS,

Plaintiff-Appellant,

versus

BOYD W. HOWZE, JR., et al.,

Defendants,

CITY OF APALACHICOLA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 6, 2009)

Before BIRCH, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Sherman Lynell Thomas, proceeding pro se, appeals the district court's order granting summary judgment in favor of the City of Apalachicola (the "City") in his civil rights action under 42 U.S.C. § 1983. On appeal, Thomas argues that the district court: (1) erred in granting summary judgment on his claim that the City violated his First Amendment rights by refusing to allow him to maintain a structure on City property; (2) erred in granting summary judgment on his claim that the City violated his First Amendment rights by refusing to place him on a city commission meeting agenda; (3) erred in granting summary judgment on his claim that the City violated his Fourteenth Amendment right to equal protection by towing his vehicle; and (4) abused its discretion by imposing sanctions for a discovery violation. After careful review, we affirm.

We review a district court's grant of summary judgment de novo, considering all evidence and reasonable inferences drawn therefrom in the light most favorable to the non-movant. Ellis v. England, 432 F.3d 1321, 1325 (11th Cir. 2005). Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Because standing is a necessary component of this Court's jurisdiction

to hear cases and controversies under Article III, we must address the matter first "without deference to the district court's legal conclusions." ACLU of Fla., Inc. v. Miami-Dade County Sch. Bd., 557 F.3d 1177, 1190 (11th Cir. 2009), petition for cert. filed, (U.S. June 18, 2009) (No. 08-1564). We review the imposition of a discovery sanction under Fed.R.Civ.P. 37 "for an abuse of discretion and a determination that the findings of the trial court are fully supported by the record." BankAtlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1048 (11th Cir. 1994).

First, we find no merit in Thomas's argument that the district court erred by granting summary judgment on his claim that the City violated his First Amendment rights by refusing to allow him to maintain a structure on City property.[1] "The

---

[1] As an initial matter, however, we reject the City's argument that Thomas did not have standing to bring this claim. Standing requires the plaintiff to show: (1) that he suffered, or faced an imminent, but not merely hypothetical, prospect of suffering, "an invasion of a legally protected interest resulting in a concrete and particularized injury," (2) that the injury was "caused by the defendant's complained-of actions," and (3) that the "injury or threat of injury must likely be redressible by a favorable court decision." ACLU, 557 F.3d at 1190 (quotations omitted). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). On the record here, Thomas had standing to challenge the City's refusal to allow him to maintain his structure because: (1) Thomas suffered injury when the City requested that he remove the structure under Ordinance 61-4, see Granite State Outdoor Adver., Inc. v. City of Clearwater, Fla., 351 F.3d 1112, 1117 (11th Cir. 2003) (holding that a plaintiff suffered injury sufficient to confer standing to challenge the constitutionality of an ordinance after the City denied his application for a billboard permit under that ordinance); (2) this injury was causally related to the alleged constitutional violations challenged; and (3) it is likely that the injury would be redressed by a favorable decision because the City does not argue that Thomas's structure failed to meet the requirements of other unchallenged statute or ordinances. See KH Outdoor, L.L.C. v. Clay County, Fla., 482 F.3d 1299, 1303-04 (11th Cir. 2007) (holding that a plaintiff failed to satisfy the redressibility requirement where his application for a billboard permit did not meet the

3

validity of restrictions on protected First Amendment expression depends upon the type of speech and the type of forum being regulated." Gold Coast Publ'ns, Inc. v. Corrigan, 42 F.3d 1336, 1344 (11th Cir. 1994). "Traditional public fora are places which by long tradition or by government fiat have been devoted to assembly and debate." Id. (quotations omitted). "Streets and parks have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Id. (quotations omitted). Where a limitation on the time, place, or manner of expression in traditional public fora is content-neutral -- meaning that no distinction is made based on content -- it must be "narrowly tailored to serve a significant government interest" and provide "ample alternative channels of communication." Id. (quotations omitted).

Here, Ordinance No. 61-4 provides that "[n]o person shall erect, construct, place or maintain any obstruction or encroachments whatever on the streets, alleys or sidewalks of the City except where a permit has been issued by the City permitting the same." Since Ordinance 61-4 expressly regulates all structures "on the streets,

---

requirements of other unchallenged statutes and regulations). Indeed, while Thomas agreed to remove the structure from the right of way, he did so only after the City denied his permit application. Further, even if Thomas does not intend to rebuild the structure there, he is not consequentially prohibited from seeking redress in damages for a prior injury. See City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983) (noting that a plaintiff's failure to allege a sufficient likelihood of future injury does not affect his standing to claim damages for a prior injury).

4

alleys or sidewalks of the City" -- areas that are typically considered public fora within the meaning of the First Amendment, see id. -- it is a content-neutral regulation that must be narrowly tailored to serve a significant government interest and provide ample alternative channels of communication. See id.

The record shows that Ordinance 61-4 serves the City's significant interest in the public's health, safety and general welfare by preventing the encroachment of structures on City property, and by protecting the public from any hazardous structures or materials placed on City property. See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1318 (11th Cir. 2000) ("To demonstrate the significance of its interest, the City is not required to present detailed evidence . . . , [but] is entitled to advance its interests by arguments based on appeals to common sense and logic.") (quotations omitted); see also id. at 1319 ("[M]unicipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for the movement of people and property, the primary purpose to which the streets are dedicated.") (quotations omitted). Further, the Ordinance is narrowly tailored by providing a permitting process to vet whether structures built on City-owned property are in the interest of the public's health, safety and general welfare. See Jones v. Heyman, 888 F.2d 1328, 1333 (11th Cir. 1989) ("the means adopted by the government need not be the least-intrusive or least-restrictive . . . so

long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation"). Finally, the Ordinance allows structures to be built with proper permitting, and does not target other forms of speech, which indicates that adequate alternative avenues of communication remain open. See Ward v. Rock Against Racism, 491 U.S. 781, 802 (1989) ("That the city's limitations on volume may reduce to some degree the potential audience for respondent's speech is of no consequence, for there has been no showing that the remaining avenues of communication are inadequate."). Because Thomas has failed to dispute that Ordinance 61-4 is narrowly tailored to serve a significant government interest and provides ample alternative channels of communication, the district court did not err in granting summary judgment on this First Amendment claim.[2]

We are likewise unpersuaded by Thomas's argument that the district court erred by granting summary judgment on his claim that the City violated his First Amendment rights by refusing to place him on the agenda for a city commission meeting. Speech at city commission meetings may be restricted to specified subject matter. Rowe v. City of Cocoa, Fla., 358 F.3d 800, 802 (11th Cir. 2004). In other

---

[2] Notably, Thomas has never argued that Ordinance 61-4 or the municipal code granted the City "unbridled discretion" in the denial of his permit application, and the record is not developed on this issue. While we read briefs filed by pro se litigants liberally, Timson v. Sampson, 518 F.3d 870, 874 (11th Cir.), cert. denied, 129 S.Ct. 74 (2008), we will not act as de facto counsel for the appellant or otherwise rewrite a deficient pleading. GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998).

words, city commission meetings are "limited public fora," and "the government may restrict access . . . by content-neutral conditions for the time, place, and manner of access, all of which must be narrowly tailored to serve a significant government interest." Id. at 802-03 (quotations omitted). "There is a significant governmental interest in conducting orderly, efficient meetings of public bodies," and "[o]ne recognized way to conduct orderly, efficient meetings . . . is for public bodies, such as a city council, to confine their meetings to specified subject matter." Id. at 803.

On the record here, it was undisputed that Thomas refused to submit a specific topic to the city administrator for inclusion on the agenda prior to the meeting. Further, he was permitted to speak during the public comment portion of the meeting. Because city commission meetings are limited public fora, the City had authority to make content-neutral conditions for the time, place, and manner of access, so long as they were narrowly tailored to serve a significant government interest. See Rowe, 358 F.3d at 803. Prior to the meeting, the City instituted a new policy that required persons to submit a specific topic before being included on the agenda for city commission meetings. Before instituting this policy, it had difficulties conducting efficient meetings because persons would provide vague topics and speak for a long time, causing the meetings to last an unreasonable amount of time. Because this restriction was content-neutral, merely regulated the time, place, and manner of

speech, and was narrowly tailored to serve a significant government interest, the district court did not err in granting summary judgment on this claim. See id.[3]

We also do not agree with Thomas's claim that the district court erred in granting summary judgment on his claim that the City violated his Fourteenth Amendment right to equal protection. The Equal Protection Clause of the Fourteenth Amendment requires state governments to treat similarly situated individuals alike. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1313 (11th Cir. 2006). Thus, "unequal application of a facially neutral statute may violate the Equal Protection Clause." Strickland v. Alderman, 74 F.3d 260, 264 (11th Cir. 1996). In order to prevail based upon the application of a facially neutral statute, a plaintiff must show that: (1) "[he] was treated differently than similarly situated persons"; and (2) "the defendant unequally applied the facially neutral statute for the purpose of discriminating against [him]." Id.

Thomas argues that the City treated several similarly situated persons differently by failing to leave notices on vehicles near residences owned by the chief of police, Anderson Williams, and Fred Reeder, a white neighbor. However, Thomas

---

[3] To the extent that Thomas's appellate brief raises a First Amendment retaliation claim against the City based on its refusal to include him on the agenda for the meeting and its towing of his vehicle, he did not raise these claims brief before the district court. Accordingly, he has waived any argument in this regard on appeal. See Access Now, Inc. v. S.W. Airlines, Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt." (quotations omitted)).

8

did not allege that the vehicle near Williams's residence was located in a right of way, and thus Williams was not similarly situated. See id. While Thomas asserted that the vehicle near Reeder's residence was located in the City's right of way, there is no evidence that the City failed to enforce the towing policy on Reeder's vehicle "for the purposes of discriminating against" Thomas. See id. Instead, the record shows that the City tagged numerous vehicles pursuant to the policy during the summer of 2007 and did not specifically target Thomas's vehicle. Accordingly, the district court did not err in granting summary judgment in favor of the City on this claim.[4]

Lastly, we find no merit in Thomas's claim that the district court abused its discretion by finding that he failed to comply with his discovery obligations and ordering payment of costs and attorney's fees of $900 to the City. If a party fails to appear at his own deposition or serve his answers, objections, or written response to interrogatories, a district court "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(d).

---

[4] Finally, Thomas's initial appellate brief does not argue that the district court erred in granting summary judgment in favor of the City on his equal protection claim regarding the City's failure to post a "Slow Children at Play" sign near his residence. Thus, he has abandoned this claim on appeal. See Horsley v. Feldt, 304 F.3d 1125, 1131 n.1 (11th Cir. 2002).

As the record shows, Thomas does not dispute that he refused to attend his deposition without good cause.  Therefore, the district court did not abuse its discretion by ordering payment of costs and attorney's fees to the City.  See id.

**AFFIRMED.**[5]

---

[5] In addition, Thomas's motion to dismiss and remand by default with prejudice is DENIED.