United States Court of Appeals,

Eleventh Circuit.

No. 94-8919.

Norris B. STRICKLAND, Plaintiff-Appellee, Cross-Appellant,

v.

Michael ALDERMAN, in his Individual and Official Capacity, Ed Richardson, in his Individual and Official Capacity, Jerry McDaniel, Mayor of the City of Jesup, Georgia, in his Individual and Official Capacity, City of Jesup, Georgia, Defendants-Appellants, Cross-Appellees.

Feb. 6, 1996.

Appeals from the United States District Court for the Southern District of Georgia. (No. CV293-36), Anthony A. Alaimo, Judge.

Before HATCHETT and BIRCH, Circuit Judges, and GODBOLD, Senior Circuit Judge.

HATCHETT, Circuit Judge.

In this appeal, the court holds that the city of Jesup, Georgia and its officials did not purposefully discriminate against a land developer regarding building permits and standing ground water. We affirm in part and reverse in part.

FACTS

In 1966, Norris B. Strickland purchased a portion of a preexisting subdivision and renamed the subdivision Wayne Terrace. Later that year, the city of Jesup, Georgia annexed Wayne Terrace. At the time of annexation, subdivisions in Jesup were subject to an ordinance that required each subdivision lot to have water and sewer connections. Because Wayne Terrace had been recorded prior to annexation, it was not subject to Jesup's subdivision ordinance. In 1969, the city of Jesup amended its subdivision ordinance to shift the burden of furnishing water and sewer connections from the

city to the owners of subdivisions. The amended subdivision ordinance did not affect Wayne Terrace as originally platted. Strickland, however, acquired the remaining portion of the original subdivision in 1972 and added that tract of land to Wayne Terrace. As a result, the newly acquired property became subject to Jesup's subdivision ordinance as amended in 1969.

In 1977, Wayne Terrace began receiving water and sewer services from the city. Several of the lots in Wayne Terrace, however, did not have water and sewer connections. In 1985, city officials informed Strickland that he was in violation of the city's subdivision ordinance and revoked his subdivision license. Although the city revoked Wayne Terrace's subdivision privileges, the city continued to grant Strickland's requests for building permits in Wayne Terrace. As a result of the revocation, however, a dispute developed between Strickland and the city as to whether the 1969 subdivision ordinance applied to Wayne Terrace. In 1988, the parties reached a settlement, and Wayne Terrace's subdivision privileges were reinstated.

Under the terms of the settlement agreement, Strickland agreed to deposit funds with the city to purchase the necessary plumbing materials for all the lots in Wayne Terrace without water and sewer connections. The city agreed to provide the labor necessary to install the water and sewer connections.[1] Notwithstanding the terms of the agreement, Strickland requested building permits for

---

[1]The city entered into similar settlement agreements with other subdivision developers in order to clarify the developer and the city's responsibilities under the 1969 subdivision ordinance.

lots that lacked water and sewer connections without depositing funds for such connections. In spite of Strickland's noncompliance with the agreement, the city sent Strickland estimates of the cost of the connections. Strickland paid the amount listed on the estimate statements. Upon receiving payment, the city installed water and sewer connections for lots on which it had received building permit requests. Prior to 1990, the city discontinued sending Strickland estimates for water and sewer connections and began denying all informal building permit requests in Wayne Terrace.

Sometime after April 1988, Strickland telephoned city hall to request a building permit for a lot in Wayne Terrace. An unidentified person at city hall told Strickland that no building permits would be issued for Wayne Terrace. At about the same time, Strickland attempted to sell the remaining lots in Wayne Terrace to developer Andrew Haman for $30,000. Many of these lots were without water and sewer connections. Haman met with the city building inspector, Ed Richardson, to discuss his pending purchase of Wayne Terrace. Richardson informed Haman that Wayne Terrace had some problems with water and sewer connections, and as a result, he would be unable to obtain building permits. Because of his conversation with Richardson, Haman did not purchase Wayne Terrace. The following year, in 1991, Strickland agreed to sell a Wayne Terrace lot to David Conner. Prior to signing the sales agreement, Conner went to city hall to apply for a building permit. While Conner was filling out the building permit application form, a city employee told him that a building permit could not be issued for

the lot until Strickland requested the city to install a sewer connection.  Conner did not complete his application or purchase property in Wayne Terrace.  Later in 1993, Strickland telephoned city hall and made a second request for a building permit.  An unidentified city agent denied this request.  At no time since entering the settlement agreement has Strickland deposited funds with the city or requested water and sewer connections for the remaining lots.

Sometime before April 1991, the city, while installing water and sewer connections, changed the topography of Strickland's property, substantially affecting water drainage on the property. On April 24, 1991, the city sent Strickland a letter advising him that it had received several complaints concerning stagnant water on his property.  In this letter, the city informed Strickland that he was in violation of the city's standing water ordinance and also informed him that if he failed to correct the problem he would be issued a citation.  Strickland did not correct the standing water problem on his property, and he was issued a citation in August 1991.  At the time Strickland filed this action, he was the first person to receive a citation for violating the city's standing water ordinance.

PROCEDURAL HISTORY

On February 26, 1993, Strickland, appellee and cross-appellant, filed this lawsuit pursuant to 42 U.S.C. § 1983 against appellants and cross-appellees City Manager Michael Alderman, Mayor Jerry McDaniel, City Building Inspector Ed Richardson (in their individual and official capacities), and the

City of Jesup (collectively, "appellants").  In the complaint, Strickland alleges that the city's denial of building permits and prosecution of the standing water citation violated his constitutional rights to substantive due process, procedural due process, and equal protection under the Fifth and Fourteenth Amendments.

At a jury trial in April 1994, at the close of Strickland's case and at the close of all the evidence, the appellants moved for judgment as a matter of law pursuant to rule 50 of the Federal Rules of Civil Procedure.  The district court reserved ruling on the motions and submitted the case to the jury on all claims.  On April 21, 1994, the jury returned a verdict in favor of Strickland, awarding him $110,000 in compensatory damages against the city and $2,000 in punitive damages against each of the city officials.

On April 28, 1994, Strickland filed a motion to amend or alter the judgment seeking to permanently enjoin the city from prosecuting him for the standing water violation.  In response, on May 9, 1994, appellants renewed their motion for judgment as a matter of law claiming that:  (1) the 1988 settlement agreement precluded Strickland from claiming that the 1969 subdivision ordinance did not apply to Wayne Terrace;  (2) Strickland's claims based on the city's denial of building permits were not ripe for adjudication because the city had not rendered a final decision with respect to those denials;  and (3) Strickland did not prove an equal protection violation with respect to the city's prosecution of the standing water violation.  On July 5, 1994, the district court granted in part and denied in part appellants' motion.

Specifically, the district court granted the motion with respect to Strickland's claims pertaining to the denial of building permits finding that the claims were not ripe for adjudication because the city had not rendered a final decision. Accordingly, the court vacated the jury's award of compensatory damages against the city. With respect to Strickland's standing water citation, the court affirmed the jury's award of punitive damages against the city officials. Moreover, the court granted Strickland's motion to amend or alter the judgment and permanently enjoined the city from continuing its prosecution of Strickland for the standing water violation. Appellants appeal the district court's judgment, and Strickland cross-appeals.

CONTENTIONS

Appellants contend that the district court erred in denying their motion for judgment as a matter of law on the equal protection claim based upon the standing water citation. Specifically, appellants contend that Strickland did not establish a prima facie case of equal protection violation because he failed to prove that: (1) other property owners were similarly situated; and (2) the city purposefully discriminated against him. In response, Strickland asserts that he presented sufficient evidence that appellants treated him differently than similarly situated persons. Strickland also argues that the evidence presented proves that the city prosecuted him with discriminatory intent; therefore, the district court properly denied appellants' motion for judgment as a matter of law.

On cross-appeal, Strickland contends that his due process and

equal protection claims based on the city's denial of building permits are ripe for adjudication and that the district court erred in granting the motion for judgment as a matter of law on the basis that he had not obtained a final decision from the city. Specifically, Strickland contends that he is excused from obtaining a final decision from the city because attempting to do so would have been futile. In response, appellants assert that the futility exception to the final decision requirement has no application in this case because Strickland did not make a significant effort to obtain building permits. Thus, they assert that the district court properly granted their motion on this basis.

## ISSUES

We address two issues: (1) whether Strickland presented sufficient evidence to support a finding that he was similarly situated to other property owners; and (2) whether Strickland's due process and equal protection claims based upon the city's denial of building permits were ripe for adjudication.

## DISCUSSION

This appeal arises from the district court's denial of appellants' motion for judgment as a matter of law. We first address appellants' arguments. In reviewing the district court's disposition of a motion for judgment as a matter of law, we apply the same standard as the district court used in determining whether to grant the motion. *Walker v. Nationsbank of Florida N.A.,* 53 F.3d 1548, 1555 (11th Cir.1995). We review all of the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. *Walker,* 53 F.3d at 1555.

A post-verdict motion for judgment as a matter of law should only be granted where "reasonable men could not arrive at a contrary verdict." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (*en banc* ).[2] "Where substantial conflicting evidence is presented such that reasonable people "in the exercise of impartial judgment might reach different conclusion[s],' the motion should be denied." *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1558 (11th Cir.1988) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (*en banc* )).

A. Sufficiency of the evidence pertaining to the equal protection claim based upon the prosecution

Appellants challenge the district court's denial of their motion for judgment as a matter of law on the grounds that Strickland has failed to prove that he was similarly situated to other property owners. [3] It is well settled that unequal application of a facially neutral statute may violate the Equal Protection Clause. *Eide v. Sarasota County,* 908 F.2d 716, 722 (11th Cir.1990), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed. 1179 (1991); *Mackenzie v. City of Rockledge,* 920 F.2d 1554, 1559 (11th Cir.1991). In order to prevail on an equal protection claim based upon the application of a facially neutral statute, it must be establish that: (1) the plaintiff was treated differently than similarly situated persons; and (2) the defendant unequally

---

[2]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

[3]Appellants also challenge the district court's denial of the motion on the basis of qualified immunity. Because we reverse on other grounds we do not address this argument.

applied the facially neutral statute for the purpose of discriminating against the plaintiff. *E & T Realty v. Strickland,* 830 F.2d 1107, 1109-10 (11th Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988).

Strickland asserts that appellants knew of other property owners in violation of the standing water ordinance but singled him out for prosecution because he had filed an earlier lawsuit against the city. Appellants contend that Strickland was not similarly situated to other property owners for two reasons. First, the standing water on Strickland's property persisted months longer than the standing water on other property. Second, Strickland's property was the only property of which the city had received complaints concerning standing water.[4]

After reviewing the evidence in the light most favorable to Strickland, we conclude that the evidence adduced at trial does not support the jury's finding that Strickland was similarly situated to other property owners. The evidence presented at trial established that immediately after a heavy rain several owners had standing water on their property in violation of the city's standing water ordinance. But, unlike Strickland's property, the standing water on these properties would dissipate in a matter of days. Moreover, the evidence at trial also revealed that

---

[4]In addition, appellants argue that the issuance of citations to property owners about whom they received complaints is rationally related to a government interest. Because the "rational relation" standard applies to equal protection challenges to a statute that discriminates on its face, but not to challenges based upon the alleged discriminatory application of a facially neutral statute, we do not address this argument. *See E & T Realty,* 830 F.2d at 1112 n. 5.

Strickland's property was the only property of which the city had received complaints about standing water. Strickland points out that the city helped create the standing water problem on his property for which he is being prosecuted. This fact, although probative on the issue of whether the city's prosecution was brought for an impermissible purpose, is not relevant to the determination of whether Strickland is similarly situated to other property owners.

Because Strickland presented no evidence indicating that other property owners violated the standing water ordinance as egregiously as he did, we conclude that Strickland has not made a prima facie showing that he was similarly situated.[5] "Different treatment of dissimilarly situated persons does not violate the Equal Protection Clause." *E & T Realty,* 830 F.2d at 1109. Accordingly, we reverse district court's denial of judgment as a matter of law as to this claim. For the foregoing reason, we need not address whether Strickland has shown purposeful discrimination.

B. Ripeness of equal protection claim pertaining to denial of building permits

On cross-appeal, Strickland challenges the district court's grant of judgment as a matter of law with respect to his claims based on the city's failure to issue building permits. Strickland contends that he was arbitrarily denied permits in violation of the Fifth and Fourteenth Amendments and asserts that his claims are ripe for adjudication.

---

[5]Even assuming that sufficient evidence did exist, we would reverse the denial of judgment as a matter of law on this claim because the trial court erroneously instructed the jury on the elements of an as applied equal protection claim.

As applied due process and equal protection claims are ripe for adjudication when the local authority has render its final decision with respect to the application of the regulation. *Eide,* 908 F.2d at 725. If the authority has not reached a final decision, "the [property owner] cannot assert an as applied challenge to the decision because, in effect, a decision has not been made." *Eide,* 908 F.2d at 725. An exception to the final decision requirement exists where it would be futile for the plaintiff to pursue a final decision.[6] *Eide,* 908 F.2d at 726. Because Strickland has not obtained a final decision from the city, he must demonstrate that it would have been futile for him to pursue a final decision.[7]

In the instant case, Strickland alleges that the city began arbitrarily denying him building permits sometime after April 1988.

---

[6]The Seventh and Ninth Circuits require a plaintiff attempting to fall within the futility exception to submit at least one meaningful application to the local authority. *See Unity Ventures v. Lake County,* 841 F.2d 770, 775 (7th Cir.1988), *cert. denied,* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *Herrington v. Sonoma County,* 834 F.2d 1488, 1494-95 (9th Cir.1987), *as amended,* 857 F.2d 567, 569 (9th Cir.1988), *cert. denied,* 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989). In *Eide,* we declined to adopt the "one meaningful application" rule because the facts in that case did not convince us that it would have been futile for the plaintiff to obtain a final decision. *Eide,* 908 F.2d at 726-27 n. 17. Similarly, we do not decide whether the "one meaningful application" rule applies in this case because Strickland has not set forth sufficient facts to support a finding of futility.

[7]In an attempt to circumvent the final decision requirement, Strickland argues that the city's denial of building permits to prospective purchasers Conner and Haman directly and substantially harmed his interests, and therefore he asserts that he has third-party standing to bring these claims under 42 U.S.C. § 1983. This argument is baseless. Neither Conner nor Haman obtained a final decision from the city. In fact, no prospective purchaser even submitted a building permit application to the city.

At trial, Strickland testified that he telephoned city hall on two occasions and requested building permits for lots located in Wayne Terrace. Both times an unidentified person denied his request. Strickland did not fill out an application to formally request a building permit. In fact, Strickland at no time traveled to city hall to make inquires about obtaining building permits for Wayne Terrace. Strickland argues that it would have been futile for him to apply for a building permit because the city allegedly did not allow applicants to apply for building permits unless it intended to approve the application. In support of this argument, Strickland notes that the city has no record of unapproved building permit applications.

We find Strickland's argument unpersuasive. "Decisions on ripeness are fact sensitive." *Eide,* 908 F.2d at 727. Here, the city had no opportunity to render a final decision with respect to Strickland's permit requests because Strickland did not comply with the building permit application process. Because Strickland has not set forth facts sufficient to prove futility, we conclude that his claims are not ripe. Accordingly, we affirm the district court's grant of judgment as a matter of law as to these claims.

CONCLUSION

We reverse the district court's denial of appellants Alderman, McDaniel, Richardson and the City of Jesup's motion for judgment as a matter of law. We also set aside the injunction enjoining the city from continuing to prosecute Strickland in connection with his violation of the city's standing water ordinance. Additionally, we affirm the district court's determination that Strickland's claims

based upon the denial of building permits are not ripe for adjudication.

AFFIRMED IN PART and REVERSED IN PART.