[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14595
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 17, 2012
JOHN LEY
CLERK

D.C. Docket No. 3:10-cv-00157-MCR-EMT

CRYSTAL DUNES OWNERS ASSOCIATION INC.,
A Florida Corporation,
WILLIAM C. BRAAS, III,
ALBERTO J. DE JONGH,
RICHARD H. POWELL,
JANICE P. MAZUR,

Plaintiffs - Appellants,

versus

CITY OF DESTIN, FLORIDA,
GREGORY KISELA,
City Manager, City of Destin,
SARAH SEEVERS,
"SAM" Mayor, City of Destin Florida,
LARRY R. ASHLEY,
In His Official Capacity as
Sheriff of Okaloosa County,

Defendants - Appellees,

OKALOOSA COUNTY SHERIFFS OFFICE, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 17, 2012)

Before PRYOR, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Crystal Dune Owners Association, Inc., and individual condominium owners, appeal the district court's dismissal of their § 1983 claims against the City of Destin, Florida and the Okaloosa County Sheriff's Office for deprivation of procedural due process and equal protection. After thorough review of the parties' arguments, we affirm.

Appellants ("Owners") own property in a beachfront condominium complex in Destin, Florida. They allege that members of the public have come up from the public beach area, and entered upon their private beachfront properties, and have remained there after receiving notice to leave. This unauthorized entrance by the public constitutes a trespass under Florida law. See Fla. Stat. Ann. § 810.09(1)(a). Owners have therefore sought the assistance of local law enforcement in removing the trespassing members of the public. However, pursuant to City policy, the Sheriff's Office will not enforce trespass laws within twenty feet of the wet sand's

2

edge—an area which, depending on the tide, encroaches on Owners' property. As a result of this policy, Owners have been unable to secure the assistance of local law enforcement officials to enforce trespass laws on their beachfront property, despite their repeated attempts to do so.

Owners filed a complaint in district court against the City of Destin, the Mayor of Destin, and the Okaloosa County Sheriff under 42 U.S.C. § 1983, alleging deprivation of procedural due process and violation of their rights to equal protection of the law. The City, Mayor and Sheriff filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motions to dismiss, ruling that Owners had failed to allege deprivation of a constitutionally protected liberty or property interest to substantiate their due process claim. As to the equal protection claim, the district court held that Owners failed to identify a similarly situated comparator.

This Court reviews a district court's dismissal under Rule 12(b)(6) de novo, accepting the allegations in the complaint as true. Mills v. Foremost Ins. Co., 511 F.3d 1300, 1303 (11th Cir. 2008).

In order to successfully state a claim for deprivation of due process, a party must show: "[1] deprivation of a constitutionally-protected liberty or property interest; [2] state action; and [3] constitutionally inadequate process." Cryder v.

Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). Owners argue that the district court erred by not finding a property right. In particular, they contend that "a fundamental element of the rights attendant to private property is the right to exclude others," and that Florida law reflects this right in its trespass statute, Fla. Stat. Ann. § 810.09. They further argue that enactment of the City's twenty-foot policy "prohibits enforcement of [their] right to exclude through ordinary recourse to law enforcement," and constitutes "de facto authorization for beachgoers to use those areas for their own purposes."

We begin by analyzing the allegation that the twenty-foot policy has denied Owners the right to exclude others from their property. See Kaiser Aetna v. United States, 444 U.S. 164, 176, 100 S. Ct. 383, 391 (1979) (defining "right to exclude others" as "one of the most essential sticks in the bundle of [property] rights"). Based upon the facts as pleaded, we cannot accept this allegation. Owners have not alleged that the City has actually abrogated their right to exclude members of the public from their property. As the district court noted, they "have been free at all times to exclude individuals from their property through any lawful means they choose." Owners argue that the district court erred, because their factual allegations establish an absence of other lawful means to exclude members of the public. We cannot agree. Owners have not alleged that the City has in any

4

way barred their access to private remedies, such as filing a civil suit[1] against

trespassers, or establishing private security measures. In the absence of an

allegation that the City has actually abrogated Owners' right to exclude members

of the public from their land, we are left only with the allegation that the City has

refused to protect their property interests.[2]

The Supreme Court has explicitly refused to recognize a substantive due

process right to governmental aid or protection, except in a few limited

circumstances,[3] even when governmental aid is necessary to protect liberty or

property interests from private interference. See DeShaney v. Winnebago Cnty.

Dep't of Soc. Servs., 489 U.S. 189, 201–02, 109 S. Ct. 998, 1006–07 (1989).

---

[1] Owners argue that a civil trespass suit is impractical because trespassers "will neither willingly identify themselves nor volunteer to be served with process in civil suits." However, this impracticality is not the result of any state action. Therefore, it cannot be said that Appellees have denied Owners other available lawful means to exclude trespassers.

[2] To the extent that Owners have argued that the City's twenty-foot policy amounts to de facto authorization for public use of their land, the argument more closely resembles a takings claim. See A.A. Profiles, Inc. v. City of Fort Lauderdale, 253 F.3d 576, 583 n.7 (11th Cir. 2001) (explaining that property taken for public use falls under the Takings Clause; property taken for invalid use falls under the Due Process Clause). While this argument may provide a viable basis for a takings claim, plaintiffs must first exhaust the remedies available in state court before asserting a federal takings claim. See Agripost, LLC v. Miami-Dade Cnty., Fla., 525 F.3d 1049, 1052 (11th Cir. 2008).

[3] For example, the Supreme Court has imposed an affirmative responsibility on the government under the Eighth Amendment to provide adequate medical care to incarcerated prisoners, Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S. Ct. 285, 291 (1976), and an affirmative duty under the Fourteenth Amendment Due Process Clause to ensure the reasonable safety of involuntarily committed mental patients, Youngberg v. Romeo, 457 U.S. 307, 324, 102 S. Ct. 2452, 2462 (1982).

More recently, the Court considered whether a party may assert a claim for deprivation of procedural due process, based upon a state's failure to protect liberty or property interests in Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 125 S. Ct. 2796 (2005). The Supreme Court looked to the relevant state law to determine whether it established a property or liberty interest in governmental aid or assistance, and held that no such interest existed. Id. at 768, 125 S. Ct. at 2810 ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations."). In accordance with this precedent, we now examine whether Florida law guarantees Owners a property interest in police assistance to prevent members of the public from trespassing on their land. We conclude that it does not.

Florida law provides that the offense of trespass is "a misdemeanor of the first degree, punishable" under Florida law. Fla. Stat. Ann. § 810.09(2)(b). However, Florida law in no way requires that police execute an arrest in the event of trespass, or otherwise aid the property owner. Therefore, we conclude that the manner in which the City and Sheriff's Office choose to enforce § 810.09 remains subject to their discretion. Cf. Town of Castle Rock, 545 U.S. at 759, 761, 125 S. Ct. at 2805–06 (rejecting argument that Colorado statute stating, "a peace

6

officer shall arrest," displaced a "tradition of police discretion" under state law).

"[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Id. at 756, 125 S. Ct. at 2803.  Owners also point to a statement of the Attorney General of Florida declaring that property owners "may make complaints of trespass to local law enforcement officers as they occur," as additional evidence supporting their claimed property interest.  However, even accepting that this statement is an authoritative source of Florida law, it does little to establish that law enforcement officials are obligated under Florida law to follow up on any trespass complaints.  Therefore, we agree with the district court that Owners lack a cognizable property interest under Florida law in law enforcement of trespass laws.[4]  Having concluded that Owners do not have a constitutionally protected property or liberty interest at stake, we also conclude that they failed to state a due process claim, and we need not address the remaining elements of their claim.  See Cook v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1117 n.9 (11th Cir. 2005).

---

[4] Owners attempt to distinguish DeShaney and Town of Castle Rock by arguing that unlike those cases, which involved individual claims for police protection and governmental assistance in particular instances, they are challenging a more permanent "selective withdrawal" of law enforcement services.  While the selective withdrawal of law enforcement services may be relevant to an equal protection claim, we do not find this distinction relevant to Owners' due process claim.  In order to uphold the due process claim, this Court would still need to find an affirmative right to governmental assistance to prevent trespass on Owners' land, which we decline to do.

For their equal protection claim, Owners argue that the district court erred by not finding them similarly situated to other property owners in the City of Destin. Specifically, Owners claim that the lower court erroneously applied the "class of one" equal protection test from Campbell v. Rainbow City, Ala., 434 F.3d 1306 (11th Cir. 2006),[5] instead of the allegedly less stringent equal protection test from Strickland v. Alderman, 74 F.3d 260, 264 (11th Cir. 1996).[6] But we do not read the tests applied in Strickland and Campbell to be different. In fact, in construing a "class of one" equal protection claim, Campbell relied heavily on Strickland for authority, lumping Strickland into that category of equal protection claims relating to persons who are not members of a "vulnerable class." Campbell, 434 F.3d at 1313–14.

In any event, the distinction Owners seek to make is one without a difference. Under either case, they must establish that they are being treated differently than a similarly situated comparator, which they have failed to do. See Strickland, 74 F.3d at 264; Campbell, 434 F.3d at 1314. In their complaint,

_____

[5] The "class of one" test requires that a plaintiff demonstrate intentionally disparate treatment from others who are similarly situated, and that there be no rational basis for the difference. Campbell, 434 F.3d at 1314.

[6] Strickland allows a plaintiff to prevail if he can demonstrate: "(1) [he] was treated differently than similarly situated persons; and (2) the defendant unequally applied the facially neutral statute for the purpose of discriminating against the plaintiff." 74 F.3d at 264.

Owners allege that "they are not protected by law enforcement in the same manner as[] all other landowners in the City." (Emphasis added). However, "[d]ifferent treatment of dissimilarly situated persons does not violate the Equal Protection Clause." Strickland, 74 F.3d at 265 (quotation marks omitted). As the City and Sheriff's Office have argued, and we agree, beachfront property is different from non-breachfront property under Florida law. See City of Daytona Beach v. Tona-Rama, Inc., 294 So.2d 73, 75 (Fla. 1974). And under both Strickland and Campbell, satisfaction of the similarly situated prong requires a high degree of specificity. See Campbell, 434 F.3d at 1314 (holding that comparator must be "identical in all relevant respects"); Strickland 74 F.3d at 264–65 (noting that water drained slower from plaintiff's property for purposes of enforcement of standing water ordinance). Appellants, as owners of beachfront condominiums, therefore, cannot allege that they are similarly situated to every landowner in the City and expect to meet that high burden of specificity. Having failed to establish the first element of their equal protection claim, we need not address the remaining elements of Owners' equal protection claim. See Cook, 402 F.3d at 1117 n.9.

For the reasons stated above, we AFFIRM the dismissal of the Owners' claims.

9