[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12232
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-00036-JRH-WLB

CARLO CARUANA,

Plaintiff–Appellant,

versus

COLUMBIA COUNTY BOARD OF EDUCATION,
COLUMBIA COUNTY SCHOOL SYSTEM DEPARTMENT OF
TRANSPORTATION,
CHARLES R. NAGLE,
Superintendent of Schools,
DEWAYNE PORTER,
Director of Transportation,
ROBERT JARRELL, et al.,
Assistant Superintendent,

Defendants–Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(October 19, 2012)

Before TJOFLAT, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Carlo Caruana appeals from an adverse summary judgment in favor of the Columbia County Board of Education ("Board") on Caruana's claims that the Board breached a settlement agreement governing Caruana's employment as a school bus driver and violated his Fourteenth Amendment right to procedural due process when it terminated him from his job without providing him with a pre- or post-termination appeal hearing. Having considered the parties' briefs and the record, we find no reversible error in the district court's grant of summary judgment to the Board.

## I.    Background

Caruana was hired as a school bus driver for the Columbia County School District in August 2004 for an indefinite period of time and worked without an employment contract. He later joined the Transport Workers Union Local No. 279. In May 2009, Caruana was terminated from his position after a parent reported to the assistant principal that Caruana had acted inappropriately toward his two elementary school-aged sons and had made sexually explicit comments to another student on his bus route. After confirming the comment with the student and speaking with other students who corroborated the comments, the assistant principal referred the matter to the director of the county's transportation department. The director met with Caruana several times regarding the allegations, which Caruana denied and asserted that the students had a motive to fabricate the

2

story because Caruana had previously reported some of the students for school discipline.  After completing his investigation, the director informed Caruana that he would recommend termination and explained the appeal options available to Caruana.

Caruana submitted his appeal to the deputy superintendent, who met with Caruana to hear his side of the story, and determined that he should be terminated. Next, the school district's superintendent reviewed the termination recommendations of both the transportation director and the deputy superintendent. He determined that Caruana made inappropriate references to male genetalia to an elementary school student and, given the two other prior occasions for which Caruana was advised about his behavior,[1]  that his conduct warranted termination. The superintendent advised Caruana that he could have his termination reviewed by the Board.  Caruana requested the Board to review his termination and to give him a hearing on his appeal.  The Superintendent provided the Board with all documents pertaining to the termination recommendations, witness statements and Caruana's written materials.  The Board considered all of the submissions and voted to approve the termination recommendation, without conducting a hearing.

## II.    Discussion

---

[1]  Caruana had two other prior incidents, in which he was accused of making inappropriate comments to female students and in looking at female students inappropriately.  Because the incidents could not be corroborated, Caruana was advised to avoid inappropriate conversations with students and received a written warning.

3

On appeal, Caruana argues that a 2007 settlement agreement between his union and the school district provided him with an unqualified right to an in-person hearing before the Board based on the superintendent's termination recommendation and that the district court erred in its reading of the settlement agreement. He also argues that he has a constitutionally protected property right to his continued employment as a bus driver such that the failure to provide him with a pre- or post-termination hearing, where he could be represented by a lawyer and present and cross-exam witnesses, violated his procedural due process rights.[2]

Under the terms of the settlement agreement, the Board agreed to expand the grievance procedures for "classified at-will" employees (also referred to as "auxiliary personnel"), which includes bus drivers such as Caruana. The Board policy that applies to classified employees is known as policy GCK. The other major category of school district employees are referred to as "certified" employees, which includes teachers and administrators who hold advanced degrees and state certifications. "Certified" employees are governed by the Board policy known as GAE. Caruana maintains that the terms of the settlement agreement made policy GAE applicable to "classified" employees like himself and that such GAE policy contains the right to an appeal hearing before the Board.

---

[2] Caruana raised other claims before the district court regarding violations of his First Amendment and Equal Protection rights based on his union membership, but which he does not challenge on appeal. We, therefore, deem those claims abandoned.

4

We see no reversible error in the district court's conclusion that the 2007 settlement agreement did not make policy GAE applicable to "classified" employees. The district court noted that policy GAE is clear that it applies only to "certified" (and not "classified") personnel and that its purpose to implement state law regarding duties to "certified" personnel. Caruana's position as a bus driver is not a certified position. Moreover, the district court noted that policy GAE does not even apply to termination-related policies for certified employees, which are covered in a separate policy. Instead, the district court correctly concluded that policy GCK, which explicitly references classified, at-will employees, governs the procedures related to Caruana's termination. Indeed, Board policy GCK, dated December 8, 2009 and entitled "Suspension/Termination (Auxiliary Personnel)," provides the appeal procedures by which Caruana's termination is governed. This policy provides that the superintendent can temporarily terminate, pending Board approval, an auxiliary employee. Those employees who have twenty-four months of continuous employment, (as Caruana had), have the right to have the Board review their termination. The Board, upon good cause, has the discretion to grant such employees an appeal hearing. All of these procedures were followed in Caruana's case, although the Board chose not to grant Caruana an in-person

5

hearing, and instead approved his termination upon review of the written submissions.[3]

Next, Caruana argues that he had a constitutionally protected property right in his continued employment and therefore his Fourteenth Amendment procedural due process rights were violated when he was not given a formal pre- or post-termination hearing.  In order to establish a procedural due process violation, Caruana must show "a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process."  See Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994).  Here, the district court concluded that Caruana failed to establish that he had a protected property interest in his continued employment and therefore granted summary judgment to the Board on this claim.

"To obtain a protected property interest in employment, a person must have more than a mere unilateral expectation of continued employment; one must have a legitimate claim of entitlement to continued employment."  Warren v. Crawford, 927 F.2d 559, 562 (11th Cir. 1991).  "A public employee who may be terminated

---

[3] Caruana also argues that the Board failed to abide by the terms of the 2007 settlement agreement, which contemplated an expansion of due process protections for classified employees, by not providing him with an in-person appeal hearing.  We see no merit to this argument.  Prior to 2007, classified employees did not have the right to Board review of decisions regarding their termination, whereas as a result of the settlement agreement, classified employees with twenty-four months of continuous employment have the right to appeal their termination recommendations to the Board.  Here, Caruana appealed his termination recommendation to the Board, which considered his appeal and voted in favor of termination.

only for cause, however, has a protected property interest in continued employment." Id. Caruana argues that same Board policy GCK that governs the suspension or termination appeal procedures available to classified employees establishes his property right in his employment. He notes that the policy allows the superintendent to temporarily suspend or terminate an employee "who fails to comply with employment expectations and rules, who fails to perform assigned duties, or for other good and sufficient cause." Caruana, argues that the phrase "or for other good and sufficient cause," establishes that employees like him can be fired only for good cause. We see no reversible error in the district court's conclusion that this policy does not limit termination to only "for cause" reasons and thus does not create a protected property interest.

Moreover, the additional limiting language in the policy that "[n]othing in this policy shall grant the right to continued employment or change the legal status of at-will employees," supports the conclusion that Caruana could be terminated for reasons other than only for good cause. Because there is no dispute that Caruana was hired for an indefinite term and that he did not have an employment contract, this policy does not establish that Caruana has "a legitimate claim of entitlement to continued employment." See Warren, 927 F.2d at 562.

AFFIRMED.

7