[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13559
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-22505-JEM


NICOLAS A. MANZINI,

Plaintiff-Appellant,

versus

THE FLORIDA BAR,
JENNIFER FALCONE MOORE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 11, 2013)

Before TJOFLAT, CARNES, and PRYOR, Circuit Judges.

PER CURIAM:

Nicolas Manzini, a disbarred attorney proceeding pro se, appeals the district court's dismissal of his amended civil rights complaint against Jennifer Moore, an attorney for the Florida Bar. Manzini contends that the district court erred in concluding that Moore was entitled to qualified immunity. He also contends that the court erred by dismissing his amended complaint prematurely and not allowing him leave to further amend that complaint.

I.

Manzini became the subject of disciplinary proceedings by the Florida Bar in 2009 and 2010 when four separate grievances were filed against him. One of those grievances was evidently filed by The Courts at Doral Isles Condominium Association ("the Condominium Association"), one of Manzini's clients. On March 12, 2010, without Manzini's knowledge, Moore sent the following e-mail to the Condominium Association:

> I will go into details of the situation with you as soon as I am at liberty to do so. Suffice it to say, regardless of whether you had withdrawn your complaint, Mr. Manzini's position vis-à-vis the Florida Bar would have remained the same.

On March 15 Manzini consented to his own disbarment, and on March 18 Moore sent another e-mail to the Condominium Association without Manzini's knowledge:

> Hello. I can report to you that Mr. Manzini has tendered his consent to be disbarred from the Florida Bar based on his admitted failure to preserve client funds in trust and his failure to apply those funds to the

2

purpose for which they were entrusted to him.  Subject to approval of the Florida Board of Governors, the disbarment will be submitted to the Florida Supreme Court for their ultimate order of disbarment.  I am attaching a client security fund claim form (and explanatory information) which you and your organization may submit to attempt to recover funds which may have been misappropriated.  I will keep you informed as to the final disposition of this matter.

On March 23 the Florida Bar's Board of Governors accepted Manzini's disbarment.[1]  On March 26, eight days after Moore's last e-mail, the Condominium Association sued Manzini and his law firm in state court.  That same day, the judge assigned to hear that case issued an ex parte injunction freezing all of Manzini's assets including his personal, operating, and trust bank accounts.  That injunction was lifted on April 9, two weeks after it was entered.

Manzini then sued the Florida Bar and Moore under 42 U.S.C. § 1983, alleging that they had violated his civil rights while acting under color of state law. He also filed a motion to proceed in forma pauperis, which the district court granted.  After the Bar and Moore filed a motion to dismiss, Manzini amended his complaint to allege three separate counts. Only Count 1 is at issue in this appeal.[2] In that count, Manzini alleged that Moore's second e-mail to the Condominium Association amounted to common law libel because he had never admitted that he

---

[1] The Supreme Court of Florida approved Manzini's disbarment on April 1, 2010 and gave him 30 days to wind up his practice and notify his clients in order to protect their interests.

[2] Manzini did not appeal the district court's dismissal of Count 2, alleging that Moore violated his Sixth Amendment rights by providing information about his disbarment to a judge in a civil case.  Appellant's Br. at 7.  Manzini also conceded in his brief that he abandoned Count 3 of his amended complaint, as well as all of his claims against the Florida Bar, in the district court.  Appellant's Br. at 7.

3

failed to preserve client funds in trust or failed to apply those funds to the purpose for which they were entrusted to him.  Manzini further alleged that because of Moore's e-mail, the Condominium Association had sued him in state court, which led to the state court's order freezing all of his bank accounts without any notice to him, which effectively put his law firm out of business during a time when he had an obligation to wind up his affairs.  Therefore, Manzini alleged, he was deprived of constitutional rights, although he did not specify which ones.

Moore filed a motion to dismiss Manzini's amended complaint on the grounds that Manzini failed to state a federal cause of action sufficient to vest the court with subject matter jurisdiction and that Manzini's claims were barred by absolute immunity under the Eleventh Amendment.  Moore also asserted the defense of qualified immunity for the first time in her reply to Manzini's opposition to the motion to dismiss.  Manzini moved to strike the part of Moore's reply memorandum that asserted qualified immunity, arguing that she could not raise that defense for the first time in reply.  Moore then filed a motion to stay all discovery in the case until the court ruled on the motion to dismiss, and the court granted that motion.

The district court referred the case to a magistrate judge, who recommended that Moore's motion to dismiss be granted.  The magistrate judge concluded that Manzini's claims against Moore in her official capacity were barred by absolute

4

immunity under the Eleventh Amendment, and that in her individual capacity Moore was entitled to qualified immunity as to Count 1 because she was acting within her discretionary authority, and because Manzini failed to show how any of Moore's actions violated his constitutional rights. The magistrate judge also recommended denying Manzini's motion to strike, reasoning that the court could properly consider the qualified immunity issue sua sponte under 28 U.S.C. § 1915(e)(2), which governs proceedings in forma pauperis, notwithstanding Moore's failure to raise that defense in her motion to dismiss.

Manzini objected to the report and recommendation, arguing that the district court could not dismiss his complaint sua sponte, that the magistrate judge should have granted him leave to amend his complaint, and that Moore's communications with the Condominium Association were not within her discretionary authority. Manzini further argued that the magistrate judge erred in finding that he had not identified any of Moore's actions that had amounted to a deprivation of his constitutional rights. Specifically, he argued that Moore's e-mails to his former client violated his property interests under the Due Process Clause of the Fourteenth Amendment.

The district court adopted the magistrate judge's report and recommendation and dismissed Manzini's amended complaint. The court reasoned that it had the responsibility under 28 U.S.C. § 1915(e)(2) to dismiss sua sponte any in forma

5

pauperis claims seeking monetary relief  against a defendant immune from such relief.  It also agreed that Moore was entitled to qualified immunity, and that Manzini had not shown good cause as to why he should have been given a second opportunity to amend his complaint.   This is Manzini's appeal.

## II.

Manzini contends that the district court erred in dismissing his complaint on the grounds that Moore was entitled to qualified immunity.  "We review de novo a district court's decision to grant or deny the defense of qualified immunity on a motion to dismiss, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor."  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003).

## A.

The doctrine of qualified immunity provides "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."  Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quotation marks omitted).  "The immunity protects all but the plainly incompetent or those who knowingly violate the law."  Jordan v. Mosley, 487 F.3d 1350, 1354 (11th Cir. 2007) (quotation marks omitted).  A public official asserting qualified immunity "must first prove that [she] was acting within the

scope of [her] discretionary authority when the allegedly wrongful acts occurred."

Lee, 284 F.3d at 1194. In determining whether a public official was acting within

her discretionary authority, we ask: (1) whether the official was performing a

function that, "but for the alleged constitutional infirmity," would have fallen

within her "legitimate job description," and (2) whether that function was carried

out "through means that were within [her] power to utilize." Holloman ex rel.

Holloman v. Harland, 370 F.3d 1252, 1265–66 (11th Cir. 2004).

Manzini argues that Moore's second email to the Condominium Association

was not within her discretionary authority because no disciplinary proceedings

were pending against him at the time of the email. We disagree. As counsel for

the Florida Bar, Moore's duties included communicating case developments to

complaining parties. Cf., Rules Regulating the Florida Bar 3-7.4(f) (requiring bar

counsel to assist grievance committee at its request by notifying complainants and

respondents of committee actions); Rule 3-7.4(j)(2) (requiring bar counsel to notify

complainant and respondent when the grievance committee finds no probable

cause); Rule 3-7.4(k) (requiring bar counsel to submit a letter report to complainant

and respondent when the grievance finds no probable cause); Rule 3-7.5(d)

(requiring bar counsel to notify complainant and respondent of actions by the

Board of Governors). Manzini has not cited any authority, nor have we found any,

to suggest that bar counsel's duty to communicate is limited to the time when a

formal disciplinary proceeding is pending.  Because the Condominium Association had filed a complaint against Manzini, Moore's communications with it fell within her "legitimate job description," and those communications about case developments were carried out "through means that were within [her] power to utilize."  See Holloman, 370 F.3d at 1265–66.

Because Moore established that she was acting within her discretionary authority, the burden shifts to Manzini to show that:  (1) the facts alleged demonstrate that Moore's conduct violated a constitutional right; and (2) at the time of the violation, the constitutional right was clearly established.  Lee, 284 F.3d at 1194.  Manzini argues that Moore's emails caused his client to sue him in state court, which then caused the state court to freeze his bank accounts, which amounted to a deprivation of his property and liberty interests.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  A violation of either procedural or substantive due process protections may form the basis for a suit under 42 U.S.C. § 1983. McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc).

To state a claim for a procedural due process violation, Manzini must allege (1) "a deprivation of a constitutionally-protected liberty or property interest," (2) "state action," and (3) "constitutionally inadequate process." Cryder v. Oxendine,

8

24 F.3d 175, 177 (11th Cir. 1994).  Manzini must also establish an "affirmative causal connection between [Moore's] acts or omissions and the alleged constitutional deprivation."  Troupe v. Sarasota Cnty., Fla., 419 F.3d 1160, 1165 (11th Cir. 2005).  The alleged constitutional deprivation in this case is the freezing of Manzini's bank accounts for two weeks.  Manzini argues that Moore caused that deprivation because her emails amounted to the tort of defamation and caused his client to sue him in state court, which caused the state court to freeze his bank accounts, which caused a deprivation of his property and liberty interests.  But even assuming that Moore's email "caused" the Condominium Association to sue Manzini in state court, the decision to freeze his bank accounts was made by a state court judge after independently reviewing all the evidence submitted by the Condominium Association in that case.  The decision of that state court judge breaks the chain of causation between Moore's actions and any alleged constitutional violations.  Cf. Whiting v. Traylor, 85 F.3d 581, 586 n.10 (11th Cir. 1996) (noting that in § 1983 malicious prosecution actions, the arresting officers will often "not be responsible for the continuation of the prosecution because the prosecutor (or some other factor) will break the causal link between [the arresting officer's] conduct and plaintiff's injury").

To state a claim for a substantive due process violation, a person must show that their fundamental rights—those "implicit in the concept of ordered liberty"—

9

have been infringed. <u>McKinney</u>, 20 F.3d at 1556. Whatever right Manzini may have to not having a state court enter an order freezing his bank accounts for two weeks, that right is certainly not a fundamental one. He has therefore failed to state a substantive due process claim. [3]

### B.

Manzini also contends that the dismissal of his amended complaint on qualified immunity grounds was premature because he did not have a "meaningful opportunity" to respond to Moore's defense of qualified immunity, which she raised in a reply memo in support of her motion to dismiss. We disagree. In her report and recommendation, the magistrate judge reasoned that the district court could reach the issue of qualified immunity even though Moore raised that issue for the first time in a reply memorandum. <u>See</u> 28 U.S.C. § 1915(e)(2) (mandating that the Court <u>sua sponte</u> dismiss <u>in forma pauperis</u> claims for monetary relief that are brought against a defendant who is immune from such relief). Manzini had the opportunity to respond to Moore's argument by objecting to that report and recommendation, and he did so.

Manzini further contends that the dismissal of his amended complaint on qualified immunity grounds was premature because discovery had been stayed by the district court shortly after Moore filed her reply asserting the defense of

---

[3] Because the facts alleged by Manzini do not amount to a constitutional violation, we do not reach the question of whether any constitutional rights were clearly established.

10

qualified immunity.  As we have already discussed, Manzini cannot show a constitutional violation because the independent action of the state court judge broke the chain of causation between Moore's email and any alleged procedural due process violation, and because Moore did not violate any fundamental right. No amount of discovery could change that.  Manzini also argues that because "qualified immunity is an affirmative defense," that issue should have been decided at the summary judgment stage and not on a motion to dismiss, but he is wrong.  See, e.g., Nolen v. Jackson, 102 F.3d 1187, 1191 (11th Cir. 1997) (reversing the district court's denial of defendant's motion to dismiss on grounds of qualified immunity).

Finally, Manzini contends that the district court should have permitted him to further amend his complaint.  Under Federal Rule of Civil Procedure 15(a), a court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, a district court need not allow an amendment "where amendment would be futile."  Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005).  The problem with Manzini's amended complaint was that it failed to show how Moore's e-mail violated his constitutional rights.  And there was no way for Manzini to further amend his complaint to avoid that problem or the resulting conclusion that Moore is entitled to qualified immunity.  He cannot make out a claim for a procedural due process violation because the chain of causation

11

between Moore's action and any alleged deprivation of property was cut off by the independent actions of a state court.  He also cannot make out a claim for a substantive due process violation because Moore's e-mail did not violate any fundamental right.

**AFFIRMED.**

12